1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

RENE MIRELES,

Case No. 20-cv-01248-HSG

8

Plaintiff,

**ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT FOR FAILURE TO
EXHAUST ADMINISTRATIVE
REMEDIES; REQUIRING RESPONSE
FROM DEFENDANTS**

9

v.

10

C. KOENIG, et al.,

11

Defendants.

Re: Dkt. No. 27

12
13
14

Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that

15

Correctional Training Facility ("CTF") correctional officials Koening, Lee, Ortega, and Gomez

16

were deliberately indifferent to his safety, in violation of the Eighth Amendment.  Dkt. Nos. 1, 6,

17

8.  Defendants have filed a motion for summary judgment for failure to exhaust administrative

18

remedies.  Dkt. No. 27.  Plaintiff has filed an opposition, Dkt. No. 36, and Defendants have filed a

19

reply, Dkt. No. 37.  For the reasons set forth below, Defendants' summary judgment motion is

20

DENIED.

21

**BACKGROUND**

22

**I.      Complaint**

23

Plaintiff commenced this action on or about February 19, 2020.  Dkt. No. 1 ("Compl.").

24

The complaint makes the following allegations.

25

When processed into the California Department of Corrections and Rehabilitations

26

("CDCR"), Plaintiff denounced his allegiance to the Fresno Bulldogs gang, and was therefore

27

approved for housing on CTF's Level II Sensitive Needs Yards ("SNY"), i.e., classified as SNY.

28

Compl. at 8-9.  On October 15, 2018, Plaintiff arrived at CTF and was housed in Level II SNY,

per his classification.  Compl. at 9.

On December 6, 2018, Plaintiff attended a Unit Classification Committee ("UCC") meeting.  The UCC was comprised of defendants correctional captain Ortega, correctional captain Lee and correctional counselor Gomez.  In this classification hearing, defendants Ortega, Lee and Gomez informed Plaintiff that they had approved him for transfer from the Level II SNY to a non-designated programming facility ("NDPF") where he would be housed with general population ("GP") inmates.  Defendants Ortega, Lee and Gomez informed Plaintiff that his consent was not required for transfer to an NDPF, and that refusal to comply with the transfer could result in disciplinary action against him or placement in a more restrictive level of housing.  Compl. at 9. Plaintiff informed the classification committee that he could not safely program and participate on an NDPF.

On December 20, 2018, despite Plaintiff's concerns for his safety and a SNY designation in his central file, Plaintiff was transferred to South Yard, CTF's NDPF, along with approximately twenty other SNY inmates.  Compl. at 9; Compl. at 9; Dkt. No. 27 at 7-8.  Less than twenty-four hours later, Plaintiff and the newly transferred SNY inmates were attacked by about 30 GP inmates who "despise" SNY inmates.  Compl. at 9; Dkt. No. 36-1 at 3.  Plaintiff and the other SNY inmates were taken to medical for treatment, and told that they had to return to South Yard or they would be written up and sent to administrative segregation.  Dkt. No. 36-1 at 3.  Plaintiff refused to go back to South Yard because he feared for his mental and physical safety on South Yard due to his injuries and his inability to defend himself.  Due to his refusal, Plaintiff was placed in administrative segregation for three days.  Compl. at 10; Dkt. No. 36-1 at 3.  Defendant CTF Warden Koening threated Plaintiff with disciplinary action and transfer to a higher level GP facility if Plaintiff did not return to South Yard.  Compl at 10.  After three days in administrative segregation, Plaintiff was informed by a correctional captain that there was no point in refusing to return to South Yard because Plaintiff would not be transferred to a different, safer yard.  The correctional captain also threated Plaintiff with a writeup if he refused to return to South Yard.  A writeup would have resulted in Plaintiff being ineligible for release upon completing his base term, thereby extending his prison stay.  Plaintiff returned to South Yard under duress and

United States District Court
Northern District of California

1    continued to fear for his safety.  Compl. at 10-11; Dkt. No. 36-1 at 4.  Due to the attack, Plaintiff

2    suffers from chronic pain in his elbow and has limited use of his elbow.  Compl. at 11.[1]

3         The Court found that the complaint stated the following cognizable legal claims:

4    (1) defendants Ortega, Lee, and Gomez violated the Eighth Amendment's prohibition of deliberate

5    indifference to inmate safety when, as part of the December 6, 2018 UCC meeting, they ignored

6    Plaintiff's safety concerns and forced him to transfer to South Yard; and (2) defendant CTF

7    warden Koening violated the Eighth Amendment's prohibition of deliberate indifference to inmate

8    safety when he ordered Plaintiff to return to South Yard.  Dkt. No. 8.

9    **II.    CDCR Administrative Grievance Process**

10        During the relevant time period, the CDCR provided inmates with the following

11   administrative remedies, also referred to as the administrative grievance process.[2]  The CDCR

12   provided its inmates the right to appeal administratively "any policy, decision, action, condition or

13   omission by the department or its staff that the inmate or parolee can demonstrate as having a

14   material adverse effect upon his or her health, safety or welfare."  15 Cal. Code Regs. § 3084.1(a).

15   To grieve a custody issue, the inmate was required to submit his complaint on a CDCR Form 602

16   and describe the specific issue being grieved and the relief requested.  15 Cal. Code Regs. §

17   3084.2(a).  The inmate was required to state all facts known and available to him regarding the

18   issue being appealed at the time of submission; and to list all staff members involved and describe

19   their involvement in the issue.  15 Cal. Code Regs. § 3084.2(a)(1), (4).

20        To exhaust available administrative remedies for custody issues,[3] the inmate was required

21   to have his grievance proceed through three levels of review: (1) the first formal level filed with

22   one of the institution's appeal coordinators, (2) the second formal level filed with the institution's

---

[1] Plaintiff was released from CDCR custody on or around July 31, 2020.
[2] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020.  On March 25, 2020, and effective June 1, 2020, California Code of Regulations, Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487. Because the relevant events took place in 2018-2019, the current administrative grievance process does not apply to Plaintiff's claim.  All the citations in this order to the California regulations are to the regulations in place during the relevant period of this action, rather than to the current regulations.
[3] Medical issues are grieved through a separate administrative grievance process.  15 Cal. Code Regs. §§ 3999.226, 3999.277(a) (2018).

1    head or designee, and (3) the third formal level filed with the CDCR director or designee.  15 Cal.

2    Code Regs. § 3084.7.  Pursuing a grievance through the third and final level satisfied the

3    exhaustion requirement set forth in 42 U.S.C. § 1997e(a).  15 Cal. Code Regs. § 3084.1(b).

4         First and second level screening and decisions were conducted by staff located at the

5    institution, while the third level screening and decisions were conducted by staff at the CDCR

6    Office of Inmate Appeals, located in Sacramento, California.  Dkt. No. 27-1 at 2.  When a

7    grievance was received by the institution at which the inmate is housed, the grievance would be

8    assigned an institutional log number that included the acronym of the institution.  When a

9    grievance was sent to the Office of Inmate Appeals as part of the appeal to the third level, it was

10   assigned a second log number specific to the Office of Inmate Appeals and distinct from the

11   institutional log number.  Dkt. No. 27-2 at 2.  In some cases, the Office of Inmate Appeals would

12   assign the grievance two different log numbers – an IAB (Internal Affairs Bureau) number and an

13   OOA (Office of Inmate Appeals) number.  *See, e.g.*, Dkt. No. 27-2 at 6.

## III.   Plaintiff's Grievances

14

15        The record shows three grievances that raise the claims alleged in the instant action:

16   Grievance No. CTF-S-18-03557, Grievance No. CTF-19-00762, OOA Appeal No. 1818647.

17

18        ### A.   Grievance No. CTF-S-18-03557 – Initial Submission and Second Level Decision

19        On December 9, 2018, Plaintiff submitted Grievance No. CTF-S-18-03557, which grieved

20   the UCC's December 6, 2018 approval of his non-adverse transfer to an NDPF.  Plaintiff

21   identified the subject of this grievance as "transfer issue/emergency 602."   The grievance

22   explained the issue as follows:

23        On 12/6/18, I appeared before U.C.C. at which time they elected to refer me to CSR for
          BEH approval and non-adverse transfer due to conversion of CTF South Level I to a
24        NDPF.  It is a well known fact specifically here at CTF that Southern Mexicans and known
          Fresno Bulldogs – associated Bulldogs and dropout Bulldogs cannot program with each
25        other, that is not only at CTF but statewide.  All I.G.I., SSU, and ISU gang investigators
          are well aware of this fact.  My [Security Threat Group] indicates that I am "Bulldog
26        disassociated."  The "disassociated" part works for me but every CDCR officer/gang
          investigator know that Southern and Northern Mexicans do not acknowledge the STG
27        "disassociation."   I contend that CDCR staff is attempting to place me with known enemies
          and with others that would cause me serious harm.  Prison officials have a duty to protect
28        from violence from other prisoners.  The danger of harm is sufficiently serious in my

United States District Court
Northern District of California

matter and CDCR is acting with "deliberate indifference" to my health and safety. . . . Dkt. No. 27-1 at 12. Plaintiff requested that the grievance be processed as an emergency grievance[4] and that he be retained in CTF North and continue his normal programming. Dkt. No. 27-1 at 10-12.

Grievance No. CTF-S-18-03557 bypassed the first level of review and was accepted at the second level of review on or about December 11, 2018. Dkt. No. 27-1 at 11.

On January 4, 2019, Plaintiff was interviewed by defendant Ortega regarding this grievance. The parties' accounts of this interview differ.

According to Defendants, Plaintiff was given the opportunity to further explain his grievance issue and provide supporting evidence or documentation. In response, Plaintiff informed defendant Ortega that on December 21, 2018, after he was transferred to the South Yard, he was attacked by "Southern Inmates and White Inmates." Dkt. No. 27-1 at 22.

Plaintiff describes the interview as follows. The interview was a brief phone call during which defendant Ortega asked where Plaintiff was currently housed. Upon hearing that Plaintiff was housed on South Yard, defendant Ortega responded that the issue raised in Grievance No. CTF-S-18-03557 was "over" because Grievance No. CTF-S-18-03557 was an attempt to prevent the transfer and the transfer had occurred. Plaintiff responded that there was still a problem because he had been attacked just as he feared. Defendant Ortega told Plaintiff that she would write that down and submit the paperwork and that Plaintiff would soon receive a response. Based on this conversation, Plaintiff believed that Grievance No. CTF-S-18-03557 was "over." Dkt. No. 36-1 at 4.

On January 23, 2019, Grievance No. CTF-S-18-03557 was denied at the second level. The second level decision identified the grievance issue as "classification" and described the grievance issue and action request as follows:

---

[4] If a grievance is designated an emergency grievance, it bypasses the first level of review and prison officials must complete the second level review within five working days. 15 Cal. Code Regs. § 3084.9(a)(4) (2018). Non-emergency grievances are generally subject to first level review unless exempted. 15 Cal. Code Regs. § 3084.7(a) (2018). In reviewing and responding to non-emergency grievances, prison officials have 30 working days from date of receipt to complete a first level response and 30 working days from date of receipt to complete a second level response. 15 Cal. Code Regs. § 3084.8(c)(1), (2).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**APPEAL ISSUE:** CLASSIFICATION

The appellant is contesting the committee's action that took place on December 6, 2018, regarding the Behavior (BEH) override, and Level II placement to a Non-Designated Programming Facility (NDNF) at Soledad, California.  Appellant stated he objected to the transfer, and expressed that he had safety/security concerns regarding his prior gang association.  He states he is worried about being placed with enemies that would cause him serious harm.

**ACTION REQUESTED**

The appellant is requesting the following:
   1.   To not be transferred to a NDPF, and to remain in Soledad, at the Correctional Training Facility (CTF) North Yard.
   2.   That this [grievance] be processes (sic) as an emergency [grievance].

Dkt. No. 27-2 at 46.  The second level decision denied the grievance, finding that the UCC had considered the totality of Plaintiff's case facts and his security concerns and determined that no direct safety or security concerns existed; and that the yard transfer recommendation was appropriate and within department guidelines.  Dkt. No. 27-1 at 46.  The second level decision informed Plaintiff that if he were dissatisfied with the decision, he could forward the grievance for a Director's Level Review (also known as a third level decision/review) by filling out Section F of the grievance form.  Dkt. No. 27-1 at 23.  Section F of the grievance form instructs inmates that if an inmate is dissatisfied with the second level decision, the inmate should explain the reason in Section F, attach supporting documents, and submit the grievance by mail for third level review to the Inmate Appeals Branch (also referred to as the Office of Inmate Appeals).  Section F specified that the grievance must be received by the Inmate Appeals Branch within thirty calendar days of the inmate's receipt of the second level decision.  Dkt. No. 27-2 at 40.

Defendants allege that the second level decision was mailed or delivered to Plaintiff on January 25, 2019, as indicated by the notation on the grievance.  Dkt. No. 27-2 at 43.  Plaintiff states that he did not receive the second level decision in January 2019.  However, Plaintiff does not recall when he received the second level.  Dkt. No. 36-1 at 4-5.  Plaintiff states that in early 2019, after his wife asked if he had received the mail that she had sent, he realized that he was not receiving his mail.  Plaintiff therefore filed a grievance in late January 2019 about the missing/delayed mail.  The grievance was granted in part on or around March 11, 2019.  Dkt. No. 27-1 at 8; Dkt. No. 36-1 at 4.  During this time period, Plaintiff received some of his mail months

1    after it had been mailed.  Dkt. No. 36-1 at 4.

2         **B.       Grievance No. CTF-19-00762 / OOA Appeal No. 1818647**

3         On January 6, 2019, while Grievance No. CTF-S-18-03557 was pending, Plaintiff

4    submitted a grievance regarding "CTF Administration misconduct" and explained the issue as

5    follows:

6         I i/m? assert my 8th Amendment federal constitutional rights to be free from cruel and
     unusual punishment which were violated by the CTF administration when they impeded on
7         my right to be protected (see Robinson v. Prunty 9th Cir. 2001 249 f.3d 862) when my
     counselor and CTF prison officials brought me in front of an ICC/UCC and told me that I
8         was going to be transferred to South Yard for integration programming with GP: in spite
     the fact that I am an ex bulldog gang member who is sensitive need because of me
9         dropping out of the gang, and in spite the fact that I express my concern about being
     attacked by South Sider GP's or GP i/m's in general: which violated my due process rights
10        per C.C.R. Title 15 section 3375(b), do (sic) to the fact that the Classification Committee
     did not take into consideration my needs, interests, and desires.  And although I filed a 602
11        (log #CTF-S-18-03557), I was still sent to the South Yard from the North Yard, and the
     concern that I expressed to the committee about being attacked happened, because not even
12        24 hours after I was put on the South Yard I was viciously attacked; after the smoke clear I
     told CTF c/o's/administrators to get me off South Yard, and instead of them honoring my
13        desire to be safe I was threaten with a write up, and afterwards I was sent to CTF-Central
     O wing 2nd tier cell 243 for 72 hours and on the following Monday I was released under
14        duress back to South Yard.

15   Dkt. No. 27-1 at 30-32; Dkt. No. 27-2 at 71-78.  Plaintiff requested the following relief:  a transfer

16   to another facility to ensure that he did not face retaliation for exercising his First Amendment

17   right; an investigation by internal affairs; copies of the incident report regarding the December 21,

18   2018 riot and of his 114D lockup order; and his property that had been left in O wing.  Dkt. No.

19   27-1 at 30-32; Dkt. No. 27-2 at 71-78.

20        Plaintiff submitted this grievance to CTF prison authorities, where it was given the log

21   number Grievance No. CTF-19-00762.  He simultaneously submitted a separate copy of his

22   grievance directly to the Office of Inmate Appeals, where it was given the log number OOA

23   Appeal No. 1818647.  Dkt. No. 27-1 at 30-32; Dkt. No. 27-2 at 69.

24             **1)      OOA Appeal No. 1818647**

25        Plaintiff included the following attachment with OOA Appeal No. 1818647:  a citizen's

26   complaint signed on January 6, 2019, against defendant Warden Koenig, correctional counselor

27   Gomez, and South Yard captain Naravo.  The citizen's complaint identified the date, time, and

28   location of the incident as December 21, 2018, at 9:40 am, on CTF South Yard.  The citizen's

United States District Court
Northern District of California

7

complaint incorporated Grievance No. CTF-19-00762/OOA Appeal No. 1818647 by reference. Dkt. No. 27-2 at 75-77.

On or about January 30, 2019, OOA Appeal No. 1818647 was rejected on the grounds that Plaintiff had submitted it for processing at an inappropriate level by bypassing the required lower levels of review. Dkt. No. 27-2 at 69. Plaintiff did not further appeal or resubmit OOA Appeal No. 1818647.

### 2)      Grievance No. CTF-19-00762

The documents attached to OOA Appeal No. 1818647 were not submitted with Grievance No. CTF-19-00762.

On or about March 6, 2019, after a second level screening, Grievance No. CTF-19-00762 was returned to Plaintiff with a cover letter stating: "You have already submitted a [grievance] regarding this issue [Grievance] Log # CTF-18-03557 which was answered at the 2nd level of review." Dkt. No. 27-1 at 29.

On or about April 4, 2019, Plaintiff appealed the rejection as follows: "Dissatisfied. This [grievance] got nothing to do with the previous [grievance]. I would like to proceed to the next level, and exhaust administrative remedies in order to proceed to Superior Court." Dkt. No. 27-1 at 31.

On or about April 20, 2019, after another second level screening, Grievance No. CTF-19-00762 was again returned to Plaintiff with a cover letter stating: "This is a duplicate to CTF-S-18-03557. Please be specific on how this [grievance] is not a duplicate. State an issue and be detailed." Dkt. No. 27-1 at 26.

As discussed further below, Defendants allege that Plaintiff did not further appeal or resubmit Grievance No. CTF-19-00762, whereas Plaintiff alleges that he appealed to the Office of Inmate Appeals on May 14, 2019.

### C.      Grievance Nos. CTF-S-18-03557, CTF-19-00762 – Submissions to Office of Inmate Appeals

The parties disagree as to what happened with Grievance No. CTF-S-18-03557 after the second level denial and what happened with Grievance No. CTF-19-00762.

1    Defendants argue that Plaintiff appealed Grievance No. CTF-S-18-03557 to the third level

2    in May 2019, but did not appeal Grievance No. CTF-19-0762 to the third level.

3    Plaintiff states that he did not appeal the second level denial of Grievance No. CTF-S-18-

4    03557 because he believed that defendant Ortega's statements during the January 6, 2019

5    interview indicated that Grievance No. CTF-S-18-03557 was over. Dkt. No. 36-1 at 4. Plaintiff

6    states that he appealed Grievance No. CTF-19-00762 in May 2019, and attached a copy of

7    Grievance No. CTF-S-18-03557, including the second level decision dated January 23, 2019, to

8    this appeal to demonstrate that the grievances were not duplicative. Dkt. No. 36-1 at 5.

9    The record indicates the following submissions to the Office of Inmate Appeals and the

10   following decisions issued by the Office of Inmate Appeals from May 2019 to October 2019.

11   In May 2019, Plaintiff sent the following to the Office of Inmate Appeals: a copy of

12   Grievance No. CTF-S-18-03557; the second level denial of Grievance No. CTF-S-18-03557; a

13   copy of his December 6, 2018 classification review; a copy of his December 9, 2018 CDCR Form

14   22 requesting that Grievance No. CTF-S-18-03557 be processed as an emergency grievance; a

15   copy of Grievance No. CTF-19-00762; and copies of the April 10, 2019 and March 6, 2019

16   rejections of Grievance No. CTF-19-00762 for duplicating Grievance No. CTF-S-18-03557. Dkt.

17   No. 27-2 at 10-34. The envelope containing this mailing was signed by prison staff on May 14,

18   2019, postmarked on May 15, 2019, and received by the Inmate Appeals Branch by May 17, 2019.

19   Dkt. No. 27-2 at 8, 35, 36. Section F, where the inmate indicates the reason for appealing the

20   second level decision, was not filled out in the copy of Grievance No. CTF-S-18-03557 submitted

21   in this mailing. Dkt. No. 27-2 at 11. Section F was filled out in the copy of Grievance No. CTF-

22   19-00762 submitted in this mailing as follows:

> The previous [grievance] was prior to being transferred. This appeal was in regards to
> after the riot. The Constitution requires prison and jail officials to provide "reasonable
> safety" . . . A major investigation needs to take place because officers are fabricating
> paper(s) to exclude them from fault in regards to the violence CDC forced upon inmates.
> Inmate Mireles would like to exhaust administrative remedies to proceed to court.

Dkt. No. 27-2 at 29, 31. Section F of Grievance No. CTF-19-00762 is signed by Plaintiff and

dated May 9, 2019. Upon receiving this mailing, the Office of Inmate Appeals assigned this

mailing log number TLR No. 1905426, and considered it an appeal of Grievance No. CTF-S-18-

1    03557.  *See* Dkt. No. 27-2 at 8.  However, Plaintiff states that he intended this mailing to appeal

2    the screen-out of Grievance No. CTF-19-00762.

3          On June 20, 2019, the Office of Inmate Appeals responded to Plaintiff's May 2019

4    submission by cancelling it on the grounds that it was an untimely appeal of the second level

5    denial of Grievance No. CTF-S-18-03557 because it was received on May 17, 2019, past the 30-

6    day limit for appealing the January 25, 2019 second level cancellation.  Dkt. No. 27-2 at 41.  The

7    cancellation notice informed Plaintiff that once a grievance was cancelled, it could not be

8    resubmitted; that Plaintiff could file a separate grievance challenging the cancellation of Grievance

9    No. CTF-S-18-03557 but that such a grievance must be filed within thirty calendar days; that

10   Plaintiff should complete a new grievance form to grieve the cancellation of Grievance No. CTF-

11   S-18-03557 and attached the cancelled grievance with all related documents; and that Plaintiff

12   could resubmit Grievance No. CTF-S-18-03557 only if the grievance challenging the cancellation

13   were granted.  Dkt. No. 27-2 at 41.

14         On June 24, 2019, Plaintiff submitted a new grievance directly to the Office of Inmate

15   Appeals.  The OIA assigned this grievance the log number OOA-19-05426.  In Grievance No.

16   OOA-19-05426, Plaintiff identified the subject of the grievance as "Emergency 602."  He

17   described the issue as "I am trying to resubmit pursuant to CCR 3084.6(e) in order to have

18   granted.  The [grievances] are 'not' the same."  The action requested was described as follows:  "I

19   am trying to resubmit [grievance] in order to exhaust administrative remedies."  Dkt. No. 27-2 at

20   39-40.  Plaintiff attached the following to Grievance No. OOA-19-05426:  the June 20, 2019

21   Office of Inmate Appeals cancellation of Grievance No. CTF-S-18-03557; a copy of Grievance

22   No. CTF-S-18-03557; the January 2019 second level denial of Grievance No. CTF-S-18-03557; a

23   copy of his December 6, 2018 classification review; three copies of his December 9, 2018 CDCR

24   Form 22 requesting that Grievance No. CTF-S-18-03557 be processed as an emergency grievance;

25   a copy of Grievance No. CTF-19-00762; and copies of the April 10, 2019 and March 6, 2019

26   rejections of Grievance No. CTF-19-00762 for duplicating Grievance No. CTF-S-18-03557.  Dkt.

27   No. 27-2 at 41-63.

28         On October 15, 2019, the Office of Inmate Appeals issued a decision regarding Grievance

United States District Court
Northern District of California

10

No. OOA-19-05426.  The decision, titled "Third Level [Grievance] Decision," denied this grievance, stating that the Office of Inmate Appeals properly cancelled Grievance No. CTF-S-18-03557 as untimely and that the record did not indicate any reason for a delayed submission of an appeal of the second level denial of Grievance No. CTF-S-18-03557.  The decision noted that Plaintiff "provided no indication why the cancelled [grievance] was being challenged."  The decision concludes, "This decision exhausts the administrative remedy available to the appellant within CDCR."  Dkt. No. 27-2 at 38.

## DISCUSSION

### I.   Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'"  *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor.  *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020).  If, as to any

United States District Court
Northern District of California

11

1    given material fact, evidence produced by the moving party conflicts with evidence produced by

2    the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving

3    party with respect to that material fact.  *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).

4    However, facts must be viewed in the light most favorable to the nonmoving party only if there is

5    a "genuine" dispute as to those facts.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The court's

6    function on a summary judgment motion is not to make credibility determinations or weigh

7    conflicting evidence.  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

8    **II.    PLRA Exhaustion Requirement**

9         The PLRA sets forth the following exhaustion requirement: "No action shall be brought

10   with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

11   confined in any jail, prison, or other correctional facility until such administrative remedies as are

12   available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement is

13   mandatory, *Jones v. Bock*, 549 U.S. 199, 211 (2007), and requires "proper exhaustion" of

14   available administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  Proper exhaustion

15   requires using all steps of an administrative process and "demands compliance with an agency's

16   deadlines and other critical procedural rules because no adjudicative system can function

17   effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90–

18   91.  Compliance with prison grievance procedures is all that is required by the PLRA to "properly

19   exhaust."  *Jones*, 549 U.S. at 217–18.

20        "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of

21   administrative remedies:  An inmate, that is, must exhaust available remedies, but need not

22   exhaust unavailable ones."  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (alteration in original);

23   *see Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (per curiam); *see also Brown v.*

24   *Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust available remedies persists

25   as long as some remedy remains available.  Once that is no longer the case, then there are no

26   remedies . . . available, and the prisoner need not further pursue the grievance.") (citation and

27   internal quotation marks omitted).

28        "Considerable deference is owed to those who administer prison systems."  *Fuqua v. Ryan*,

United States District Court
Northern District of California

890 F.3d 838, 845 (9th Cir. 2018).  "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Ross*, 136 S. Ct. at 1859.  "When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." *Andres*, 867 F.3d at 1079 (prison officials rendered administrative remedies unavailable where prisoner had filed grievance in January 2013 and officials had not responded by December 2014). An administrative remedy is not available if prison officials inform the prisoner that he cannot file a grievance.  *See Williams v. Paramo*, 775 F.3d 1182, 1191-92 (9th Cir. 2015) (prisoner's statements that she was thwarted from filing grievance and appeal by correctional officer who rejected her grievance and refused to file her appeal met burden of production in showing that administrative remedies were not available to her).  Similarly, a prisoner need not exhaust further levels of review if he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available.  *Brown*, 422 F.3d at 935.  If prison officials improperly screen out an inmate's appeals, the inmate cannot properly complete the grievance process and administrative remedies are effectively unavailable.  *Sapp v. Kimbrell*, 623 F.3d 813, 822-24 (9th Cir. 2010) (where prison officials declined to reach merits of particular grievance "for reasons inconsistent with or unsupported by applicable regulations, administrative remedies were "effectively unavailable"); *see also Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (where prison warden incorrectly implied that inmate needed access to nearly unobtainable prison policy in order to bring timely administrative appeal, "the Warden's mistake rendered Nunez's administrative remedies effectively unavailable").  To satisfy this exception to exhaustion, an inmate must show: "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations."  *Sapp*, 623 F.3d at 823-24.

Failure to exhaust under the PLRA is an affirmative defense that the defendant must plead and prove.  *Jones*, 549 U.S. at 204, 216.  The defendant's burden is to prove that there was an

13

United States District Court
Northern District of California

1  available administrative remedy and that the prisoner did not exhaust that available administrative

2  remedy. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014); *see also Brown*, 422 F.3d at 936-37

3  (as there can be no absence of exhaustion unless some relief remains available, movant claiming

4  lack of exhaustion must demonstrate that pertinent relief remained available, whether at

5  unexhausted levels or through awaiting results of relief already granted as result of that process).

6  Once the defendant has carried that burden, the burden shifts to the prisoner to come forward with

7  evidence showing that there is something in his particular case that made the existing and

8  generally available administrative remedies effectively unavailable to him. *Albino*, 747 F.3d at

9  1172. That is, the burden shifts to the prisoner to come forward with evidence showing that there

10 is something in his particular case that made the existing and generally available administrative

11 remedies effectively unavailable to him. *Id.* But as required by *Jones*, the ultimate burden of

12 proof remains with the defendant. *Id.* If undisputed evidence viewed in the light most favorable

13 to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule

14 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied and the

15 district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.*

16        A prisoner must provide evidence, not just make conclusory allegations, to meet his burden

17 to show that existing and generally available administrative remedies were effectively unavailable.

18 *See Draper v. Rosario*, 836 F.3d 1072, 1079-80 (9th Cir. 2016). A prisoner's "unsupported

19 allegations" regarding impediments to exhaustion are insufficient to create a triable issue of fact.

20 *Id.* (plaintiff's statements that prison officials had "engaged in impeding and unethical conduct of

21 obstructing" his inmate appeals "from being exhausted in a timely manner," and had "prohibited

22 and impeded" his efforts to exhaust were insufficient to create a triable issue because plaintiff did

23 not explain what kinds of impeding and unethical conduct occurred). But as required by *Jones*,

24 the ultimate burden of proof remains with the defendant. *Albino*, 747 F.3d at 1172.

25 **III.    Analysis**

26        Defendants argue that they are entitled to summary judgment for failure to exhaust

27 administrative remedies because (1) Grievance No. CTF-S-18-03557 cannot exhaust claims

28 against defendant Koening because it was submitted on December 9, 2018, prior to defendant

14

1    Koening's involvement in the relevant events and (2) assuming arguendo that Grievance No. CTF-

2    S-18-03557, Grievance No. CTF-19-00762 and OOA Appeal No. 1818647 grieved any of the

3    claims in this action, none of these grievances were exhausted and Plaintiff has not demonstrated

4    that prison officials erred in cancelling these grievances.

5          Plaintiff argues that administrative remedies were effectively unavailable to him because

6    prison officials improperly screened out his grievances.

7          First, Plaintiff argues that prison officials rendered administrative remedies unavailable for

8    Grievance No. CTF-S-18-03557 when they refused to process it as an emergency grievance,

9    rendering the issue (transfer to South Yard) moot before the grievance could be considered, and

10   when defendant Ortega led Plaintiff to believe that Grievance No. CTF-S-18-03557 was over and

11   that a separate grievance was therefore required to raise the claims in this action.

12         Second, Plaintiff argues that prison officials rendered administrative remedies unavailable

13   for Grievance No. CTF-19-00762 because they improperly screened it out as duplicative of

14   Grievance No. CTF-S-18-03557.  Plaintiff distinguishes the two grievances as follows.  Grievance

15   No. CTF-S-18-03557 challenged Plaintiff's classification, objected to the decision to transfer him

16   from North Yard to South Yard, and requested that the grievance be processed as an emergency

17   transfer and that Plaintiff be retained at North Yard.  However, Grievance No. CTF-19-00762

18   challenged misconduct by CTF administration, and sought transfer to a different facility, copies of

19   relevant reports and orders, and an internal investigation.  In Grievance No. CTF-19-00762,

20   Plaintiff referenced the December 6, 2018 classification and subsequent transfer to South Yard to

21   provide the necessary context, but Grievance No. CTF-19-00762 challenged the attack he suffered

22   following the transfer, prison officials' refusal to remove him from South Yard after the attack,

23   and prison officials' threats and actions to force him to return to South Yard.

24         The Court first addresses whether Grievance No. CTF-S-18-03557, Grievance No. CTF-

25   19-00762 and OOA Appeal No. 1818647 grieved the issues in this action, and then turns to

26   whether administrative remedies were effectively unavailable with respect to these grievances.

27   //

28   //

United States District Court
Northern District of California

1

**A.     Whether Grievance No. CTF-S-18-03557, Grievance No. CTF-19-00762 and OOA Appeal No. 1818647 Grieved the Issues Raised in this Action**

2

The complaint raises the following cognizable legal claims: (1) defendants Ortega, Lee,

3

and Gomez violated the Eighth Amendment's prohibition of deliberate indifference to inmate

4

safety when, as part of the December 6, 2018 UCC meeting, they ignored Plaintiff's safety

5

concerns and forced him to transfer to South Yard; and (2) defendant CTF warden Koening

6

violated the Eighth Amendment's prohibition of deliberate indifference to inmate safety when he

7

ordered Plaintiff to return to the South Yard.  *See generally* Dkt. Nos. 1, 8.

8

**1.     Claim No. 1:  Defendants Ortega, Lee and Gomez's actions during the December 6, 2018 UCC meeting**

9

10

The parties agree, as does the Court, that Grievance No. CTF-S-18-03557 grieved the

11

December 6, 2018 UCC meeting, i.e. Claim No. 1.

12

**2.     Claim No. 2:  Defendant Koenig's actions after the attack**

13

Because Grievance No. CTF-S-18-03557 was filed prior to defendant Koening's alleged

14

actions, it does not grieve Claim No. 2.  However, viewing Grievance No. CTF-19-00762 in the

15

light most favorable to Plaintiff, as the Court must do at summary judgment, the Court finds that

16

Grievance No. CTF-19-00762 grieved CTF prison officials' actions after Plaintiff's transfer to

17

South Yard, including the claim in this action against defendant Koening.  As explained below,

18

viewing the record in the light most favorable to Plaintiff, the record supports a finding that

19

Grievance No. CTF-19-00762 is not duplicative of Grievance No. CTF-S-18-03557.  While

20

Grievance No. CTF-S-18-03557 only grieved the December 6, 2018 UCC meeting, Grievance No.

21

CTF-19-00762 can reasonably be construed as grieving the claim against defendant Koening for

22

the following reasons.

23

First, Grievance No. CTF-19-00762 makes allegations which specifically reference CTF

24

administrators refusing his request to be removed from South Yard and threatening him with

25

disciplinary action if he refused to return to South Yard:

26

> [N]ot even 24 hours after I was put on the South Yard I was viciously attacked; after the smoke clear I told CTF c/o's/administrators to get me off South Yard, and instead of them honoring my desire to be safe I was threaten with a write up, and afterwards I was sent to CTF-Central O wing 2nd tier cell 243 for 72 hours and on the following Monday I was released under duress back to South Yard.

27

28

United States District Court
Northern District of California

1   Dkt. No. 27-1 at 32.

2        Second, the remedies sought in Grievance No. CTF-19-00762 are specific to events

3   subsequent to the December 21, 2018 attack and distinct from what was requested in CTF-S-18-

4   3557:  transfer to another facility; investigation of CTF officials' misconduct; prison reports

5   related to the attack and to the subsequent placement in administrative segregation; and the return

6   of property left in administrative segregation.  Dkt. No. 27-1 at 30-32.  Defendants themselves

7   acknowledge that CTF-S-18-3557 could not have grieved events after CTF-S-18-3557's

8   December 9, 2018 filing date, and CTF-19-00762 lists events that happened after December 9,

9   2018.  Accordingly, at summary judgment, the Court will presume that Grievance No. CTF-S-18-

10  3557 and Grievance No. CTF-19-00762 grieve separate issues, and that Grievance No. CTF-19-

11  00762 grieves the claim against defendant Koening raised in this action.

12       **B.    Whether Administrative Remedies for Grievance No. CTF-S-18-03557 or**

13       **Grievance No. CTF-19-00762 Were Unavailable**

14       It is undisputed that Plaintiff did not exhaust administrative remedies for either Grievance

15  No. CTF-S-18-03557 or Grievance No. CTF-19-00762.  The remaining question is whether there

16  is a triable issue of material fact as to whether administrative remedies were unavailable to

17  Plaintiff for either grievance, or that the failure to exhaust was excused.

18       **1.    Grievance No. CTF-S-18-03557**

19       Plaintiff's failure to exhaust Grievance No. CTF-S-18-03557 – and by extension, the

20  transfer to South Yard – is excused because, viewing the record in the light most favorable to

21  Plaintiff, Plaintiff took reasonable and appropriate steps to exhaust this claim and was precluded

22  from exhausting because of mistakes made by prison officials.

23       The facts in this case are similar to *Nunez.*  In *Nunez*, Nunez filed a complaint raising a

24  Fourth Amendment claim arising out of an unconsented strip search.  The Warden denied it at the

25  initial level, but incorrectly cited to the wrong prison regulation (which did not govern strip

26  searches and was not available to inmates).  Nunez spent the next ten months attempting to obtain

27  a copy of this regulation so that he could appeal the denial.  The three requests he made to prison

28  officials were denied on the ground that the regulation was unavailable to inmates, but none of the

denials directed Nunez to the correct regulation.  Nunez then made a FOIA request to obtain the regulation, as directed by prison officials.  The initial FOIA request was denied and the appeal of this denial went unanswered for ten months.  Unable to obtain a copy of the regulation, Nunez finally appealed the Warden's initial denial, ten months after he had received that denial.  The appeal was rejected as untimely, because regulations required an appeal to be received within 20 days of the Warden's decision.  Plaintiff was not told that the Warden had cited the incorrect regulation until months after the final decision was issued on his complaint.  *Nunez*, 591 F.3d at 1219-22.  The Ninth Circuit held that Nunez took "reasonable and appropriate steps to exhaust his Fourth Amendment claim" and was precluded from exhausting by the Warden's mistake in citing the wrong Program Statement.  *Nunez*, 591 F.3d at 1225-26.  The Ninth Circuit found that the Warden's mistake and the BOP's subsequent failure to correct it undermined the three benefits of the exhaustion requirement: incentivizing prisoners to make full use of the prison grievance process, reducing prisoner suits because the grievance process may persuade the prisoner to not file an action in federal court, and improving the quality of the remaining prisoner suits by creating an administrative record that is helpful to the court.  *Nunez*, 591 F.3d at 1226.  The Ninth Circuit concluded that under these circumstances the Warden's mistake rendered Nunez's administrative remedies effectively unavailable and thus excused Nunez's failure to exhaust. *Nunez*, 591 F.3d at 1226.

Here, defendant Ortega's statement in the January 4, 2019 interview that the issue raised in Grievance No. CTF-S-18-03557 was "over" because Grievance No. CTF-S-18-03557 concerned an action that had already occurred (the transfer to South Yard), coupled with the prison's months-long failure to deliver the second level decision on Grievance No. CTF-S-18-03557 and the repeated rejections of Grievance No. CTF-S-19-00762 as duplicative of Grievance No. CTF-S-18-03557, rendered Plaintiff's administrative remedies effectively unavailable.  15 Cal. Code Regs. § 3084.8(c) (2018) provides that both first and second level responses "shall be completed within thirty working days of the date of receipt by the appeal coordinator."  Plaintiff submitted Grievance No. CTF-S-18-03557 on December 9, 2018; it was accepted at the second level of review on December 11, 2018; and defendant Ortega conducted the interview related to the second

18

1   level of review on January 4, 2019.  The Court presumes, as it must at the summary judgment

2   stage, that Plaintiff did not receive a second-level response to Grievance No. CTF-S-18-03557

3   until May 2019 even though the second level response was dated January 25, 2019.  Defendant

4   Ortega's statement, by itself, did not "reliably inform" Plaintiff that administrative remedies were

5   unavailable with respect to Grievance No. CTF-S-18-03557.  But when Plaintiff did not receive a

6   second-level response to Grievance No. CTF-S-18-03557 by the end of January 2019, he

7   reasonably could have believed that defendant Ortega's statement that Grievance No. CTF-S-18-

8   03557 was "over" meant that administrative remedies were no longer available with respect to this

9   grievance.

10          The Court further finds that there is a triable issue of material fact as to whether

11   administrative remedies remained available to Plaintiff after he received the second level decision

12   in May 2019.  An appeal of the second level decision would have been rejected as untimely

13   because prison officials were calculating the submission deadline from the date reported on the

14   second level decision, making the appeal due on or about February 25, 2019.  However, Plaintiff

15   could not have met that deadline, because he had not yet received the decision at that time.  In fact,

16   when prison officials incorrectly identified Plaintiff's May 2019 appeal of Grievance No. CTF-19-

17   00762 as an appeal of Grievance No. CTF-S-18-03557, they rejected the submission as an

18   untimely appeal of the second level decision of Grievance No. CTF-S-18-03557.

19          In addition, Plaintiff took reasonable steps to address what he understood to be the

20   deficiency with Grievance No. CTF-S-18-03557 as identified by defendant Ortega.  Because

21   Plaintiff was informed that Grievance No. CTF-S-18-03557 was "over" because it sought relief

22   that was no longer available – to remain on North Yard – he filed a separate grievance, Grievance

23   No. CTF-19-00762, that sought different relief, specifically a transfer to a different prison to

24   protect him from retaliation and for internal affairs to investigate the transfer to South Yard and

25   his release back to South Yard after the attack.  Yet Grievance No. CTF-19-00762 was repeatedly

26   denied at the second level on March 6, 2019 and April 20, 2019 as duplicative of Grievance No.

27   CTF-S-18-03557.  Grievance No. CTF-19-00762 was then incorrectly denied twice on the third

28   level on June 20, 2019 and October 15, 2019, as an appeal of the second level decision on

United States District Court
Northern District of California

1    Grievance No. CTF-S-18-03557.

2            Viewing the record in the light most favorable to Plaintiff, Plaintiff took reasonable and

3    appropriate steps to exhaust his claim that the transfer to South Yard constituted deliberate

4    indifference to his safety.  The prison's mistakes (stating that Grievance No. CTF-S-18-03557 was

5    "over" because it sought relief that was no longer available, the months-long delay in delivering

6    the second level decision, and repeatedly informing Plaintiff that he could not file another

7    grievance regarding events related to the transfer by rejecting Grievance No. CTF-19-00762 as

8    duplicative) precluded him from exhausting.  *See Nunez*, 591 F.3d at 1225-26; *see also Sapp*, 623

9    F.3d at 823-24.  Accordingly, the Court finds that Plaintiff's failure to exhaust his administrative

10   remedies with respect to the transfer to South Yard is excused and DENIES Defendants' motion

11   for summary judgment based on failure to exhaust administrative remedies with respect to the

12   claim that defendants Ortega, Lee and Gomez were deliberately indifferent to Plaintiff's safety.

13                    **2.      Grievance No. CTF-19-00762**

14           Viewing the record in the light most favorable to Plaintiff, there is also a triable issue of

15   material fact as to whether prison officials rendered administrative remedies effectively

16   unavailable for Grievance No. CTF-19-00762 by improperly screening it out as duplicative.  As

17   discussed above, Grievance No. CTF-19-00762 grieves events separate from the events grieved in

18   CTF-S-18-3557.  And there is evidence in the record supporting Plaintiff's claim that that his May

19   2019 submission to the Office of Inmate Appeals was an appeal of the screen out of Grievance No.

20   CTF-19-00762 as duplicative, and was not a third level appeal of Grievance No. CTF-S-18-3557.

21   In the May 2019 submission to the Office of Inmate Appeals, Plaintiff filled out Section F only in

22   the attached copy of Grievance No. CTF-19-00762, and in the copy of Grievance No. CTF-S-18-

23   3557.  Section F is to be filled out when an inmate appeals a grievance to the third level of review.

24   In Section F, Plaintiff explained why he considered the two grievances to be separate.  He stated

25   that Grievance No. CTF-S-18-3557 grieved the events prior to transfer, and Grievance No. CTF-

26   19-00762 grieved the events after the riot, i.e. after the December 20, 2018 attack.  It appears that

27   the Office of Inmate Appeals incorrectly categorized the May 2019 submission as a third level

28   appeal of Grievance No. CTF-S-18-3557, and failed to realize that Plaintiff intended for the May

United States District Court
Northern District of California

20

1   2019 submission to serve as a third level appeal of Grievance No. CTF-19-00762.  Prison officials

2   therefore rendered third level review of Grievance No. CTF-19-00762 effectively unavailable to

3   Plaintiff in that the screen out of the May 2019 submission as an untimely appeal of Grievance

4   No. CTF-S-18-3557 was inconsistent with or unsupported by applicable regulations."  *Sapp*, 623

5   F.3d at 823-24.

6     Because there is a triable issue of fact as to whether administrative remedies were rendered

7   unavailable with respect to Grievance No. CTF-19-00762, which raised the claim against

8   defendant Koening, the Court DENIES Defendants' summary judgment motion for failure to

9   exhaust administrative remedies with respect to the claim that Defendant Koening was deliberately

10  indifferent to Plaintiff's safety.

**CONCLUSION**

12    For the foregoing reasons, the Court orders as follows.

13    1. The Court DENIES Defendants' motion for summary judgment for failure to

14  exhaust administrative remedies.  Dkt. No. 27.

15    2. The Ninth Circuit has directed that when a motion for summary judgment for

16  failure to exhaust is denied, disputed factual questions relevant to exhaustion should be decided by

17  the judge after an evidentiary hearing.  *Albino*, 747 F.3d at 1170-71 (permitting limited

18  preliminary proceeding to "decide disputed questions of fact").  Accordingly, within **fourteen (14)**

19  **days** of the date of this order, Defendants shall inform the Court whether they elect to (1) proceed

20  with a limited evidentiary hearing regarding whether Plaintiff exhausted his administrative

21  remedies under the Prison Litigation Reform Act, or (2) wish to waive the exhaustion defense and

22  proceed to the merits of this action.

23    Should Defendants elect to proceed with a limited evidentiary hearing, the Court will

24  appoint counsel for Plaintiff for the limited purpose of representation during the evidentiary

25  hearing.  The evidentiary hearing will be limited to determining what statements were made by

26  defendant Ortega during the January 4, 2019 interview and when Plaintiff received the second

27  level decision on Grievance No. CTF-S-18-3557, and will require testimony from defendant

28  Ortega.

United States District Court
Northern District of California

1    Should Defendants elect to proceed to the merits of the case, the Court will set a briefing

2  schedule.

3        This order terminates Dkt. No. 27.

4        **IT IS SO ORDERED.**

5  Dated:  8/31/2021

6

7                                            HAYWOOD S. GILLIAM, JR.
                                            United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22